

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

TRISHAWN JOHNSON,

                                            Plaintiff,

                  -against-

CITY OF NEW YORK, DETECTIVE NICHOLAS
MASON, SHIELD NO. 6995, SGT. MICHAEL
DANNECKER, SHIELD #1425,

                                     Defendants.

---------------------------------------------------------------------- x

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

Docket No. 10cv04608 (FB)(SMG)

ECF CASE

Plaintiff Trishawn Johnson, by his attorneys, Stoll, Glickman & Bellina, LLP, for his complaint alleges as follows:

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiff seeks relief through 42 U.S.C. §1983 for the violation of his Fourth and Fourteenth Amendment rights in addition to violations of the laws and Constitution of the State of New York.

2.    The claim arises from a October 23, 2009 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, falsely arrested and imprisoned plaintiff, who originally came to his girlfriend's sister's house because she was being arrested and asked her sister and plaintiff to pick up her children. After officers told plaintiff and his girlfriend that the children were in a neighbor's apartment, plaintiff and his girlfriend went inside to pick them up. While plaintiff was in the neighbor's apartment getting the children, officers knocked on the neighbor's door and asked plaintiff to produce identification. When plaintiff asked what he had to show identification for, defendants answered "you fit the description". When plaintiff asked

"what description?" defendants pushed his back forward, bending him over, and kneed him in his stomach. He was handcuffed and imprisoned for approximately 30 hours before being released. All charges were eventually dismissed.

3.     Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4.     This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5.     The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

## VENUE

6.     Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

7.     Plaintiff resided at all times here relevant in Kings County, City and State of New York.

8.     The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York.  At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was

responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

9.     Detective Nicholas Mason was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Mason was plaintiff's "arresting officer" and was under the command of the Narcotics Bureau Brooklyn South. Defendant Mason is sued in his individual capacity.

10.     Sergeant Michael Dannecker, Shield #1425, of Brooklyn South Narcotics was, at all times here relevant, police officers of the NYPD, and as such were acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Does were under the command of the Narcotics Bureau Brooklyn South and are sued in their individual capacity.

11.     At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

<u>NOTICE OF CLAIM</u>

12.     Within 90 days of the events giving rise to these claims, plaintiff filed written notices of claim with the New York City Office of the Comptroller.  Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

13.  On October 23, 2009, at approximately 7:45 a.m. at 2241 Batchelder Avenue in Brooklyn, New York, plaintiff came, with his pregnant girlfriend, to his girlfriend's sister's house.

14.  His girlfriend's sister had called plaintiff and his girlfriend that morning and asked them to come over because she was under arrest and her children needed to be picked up. The sister was arrested when the detectives, with a search warrant for marijuana and a black man 5'6" and 150 pounds, only found her aunt's prescription medication in the apartment. She later consented to an adjournment in contemplation of dismissal.

15.  After officers told plaintiff and his girlfriend that the children were in a neighbor's apartment, plaintiff and his girlfriend went inside to pick them up. While plaintiff was in the neighbor's apartment getting the children, officers knocked on the neighbor's door and asked plaintiff to produce identification. When plaintiff asked what he had to show identification for, defendants answered "you fit the description". When plaintiff asked "what description?" defendants pushed his back forward, bending him over, and kneed him in his stomach.

16.  Defendants never told plaintiff what the description in the search warrant was.

17.  Plaintiff, who is about 5'5" and 175 pounds, at no time became verbally or physically combative and at no time attempted to leave the house where his pregnant girlfriend and her sister's children were.

18.  He was handcuffed and put into a prisoner van. Defendants drove plaintiff around in the prisoner van for several hours before bringing him to the precinct. Plaintiff

requested medical attention for back pain and soreness at the precinct, but was told that it would delay his release by another day. Plaintiff did not seek medical attention for any serious injury following his release.

19.  Between the precinct and Central Booking, he was imprisoned for approximately 30 hours before being released.

20.  All charges were eventually dismissed.

21.  At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

22.  During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

DAMAGES

23.  As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

    a.  Violation of his rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

    b.  Violation of his rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

c.   Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

d.   Violation of his New York State Constitutional rights under Article 1, Section 6 to due process;

e.   Physical pain and suffering;

f.   Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety; and

g.   Loss of liberty.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983
### False Arrest and False Imprisonment
### (Against Officer Defendants)

24.   The above paragraphs are here incorporated by reference.

25.   The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff.

26.   The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of plaintiff was carried out without a valid warrant, without plaintiff's consent, and without probable cause or reasonable suspicion.

27.   At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff.

28.   Throughout this period, plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, imprisoned and falsely charged.

29.   At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiff was without basis and without probable cause or reasonable suspicion.

30.   All of this occurred without any illegal conduct by plaintiff.

6

31.  All charges were dismissed.

32.  The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the United States Constitution.

33.  As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

SECOND CAUSE OF ACTION
New York State Constitution Article I §12
False Arrest and False Imprisonment
(Against All Defendants)

34.  The above paragraphs are here incorporated by reference.

35.  The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff.

36.  The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of plaintiff was carried out without a valid warrant, without plaintiff's consent, and without probable cause or reasonable suspicion.

37.  At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff.

38.  Throughout this period, plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, imprisoned and falsely charged.

39.  At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiff was without basis and without probable cause or reasonable suspicion.

40.   All of this occurred without any illegal conduct by plaintiff.

41.   All charges were dismissed.

42.   Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

43.   Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of plaintiff's rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct towards plaintiff.

44.   The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the Constitution of the State of New York.

45.   As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

### THIRD CAUSE OF ACTION
False Arrest and False Imprisonment
(Against All Defendants)

46.   The above paragraphs are here incorporated by reference.

47.   Defendants subjected plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

48.  Defendants intended to confine plaintiff, plaintiff was conscious of his confinement and did not consent to his confinement.

49.  All charges were dismissed.

50.  Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

51.  As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

## FOURTH CAUSE OF ACTION
### Malicious Prosecution
### (Against All Defendants)

52.  The preceding paragraphs are here incorporated by reference.

53.  Defendants, acting with malice, initiated a prosecution against plaintiff and caused him to be prosecuted.

54.  Defendants did not have probable cause to initiate proceeding.

55.  The criminal proceedings were terminated in plaintiff's favor.

56.  Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiff under 42 U.S.C. §1983, New York State common law, and the New York State Constitution.

57.  As a result of the malicious prosecution implemented by defendants, plaintiff was damaged.

### FIFTH CAUSE OF ACTION
42 U.S.C. §1983
Excessive Force
(Against Officer Defendants)

58.  The above paragraphs are here incorporated by reference.

59.  By using excessive force against plaintiff, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived plaintiff of his rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by the Fourth Amendment to the United States Constitution.

60.  In addition, the officer defendants conspired amongst themselves to deprive plaintiff of his constitutional rights and took numerous steps in furtherance of such conspiracy, as set forth above.

61.  The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the United States Constitution.

62.  As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

### SIXTH CAUSE OF ACTION
New York State Constitution Art. I § 12
Excessive Force
(Against All Defendants)

63.  The above paragraphs are here incorporated by reference.

64.   By using excessive force against plaintiff, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived plaintiff of his rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by Article I Section 12 of the New York State Constitution.

65.   In addition, the officer defendants conspired amongst themselves to deprive plaintiff of his constitutional rights and took numerous steps in furtherance of such conspiracy, as set forth above.

66.   Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

67.   The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the New York State Constitution.

68.   As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

## SEVENTH CAUSE OF ACTION
### Assault and Battery
(Against All Defendants)

69.   The above paragraphs are here incorporated by reference.

70.    Upon approaching, pushing plaintiff's body forward, kneeing plaintiff in the stomach, grabbing plaintiff's arms and forcing them back, handcuffing and forcibly escorting plaintiff, defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

71.    Defendants engaged in and subjected plaintiff to immediate harmful and/or offensive touching and battered him without his consent.

72.    Defendants used excessive and unnecessary force with plaintiff.

73.    Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

74.    As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

EIGHTH CAUSE OF ACTION<br>Negligent Hiring & Retention<br>(Against City Defendant)

75.    The above paragraphs are here incorporated by reference.

76.    Upon information and belief, defendant City, through the NYPD, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

77.    Upon information and belief, defendant City, through the NYPD, owed a duty of care, to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to plaintiff's as a result of this conduct.

78.    Upon information and belief, defendant officers were incompetent and unfit for

their positions.

79.   Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous and had previously falsely arrested civilians without probable cause.

80.   Upon information and belief, Defendant City's negligence in hiring and retaining the officer defendants proximately caused plaintiff's injuries.

81.   Upon information and belief, because of the defendant City's negligent hiring and retention of defendant officers, plaintiff incurred damages described above.

NINTH CAUSE OF ACTION
MUNICIPAL AND SUPERVISORY LIABILITY
(Against Defendant City)

82.   The above paragraphs are here incorporated by reference.

83.   The City is liable for the damages suffered by plaintiff in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

84.   The aforesaid event underlying plaintiff's factual allegations was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.

Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

85.    The City has been alerted to the regular use of false arrests by its police officers, through lawsuits, civilian complaints, notices of claim, City Council hearings, newspaper reports, and cases resulting in declined prosecutions and dismissals, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case. In 2009, New York City has seen a 46 percent jump in payouts to settle claims against the NYPD and has paid out more than $117 million in fiscal year 2009, compared to $80 million in 2008.[1]

86.    Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD.  The City's deliberate indifference towards the contents of civil rights litigation, towards individual officers repeatedly named in lawsuits, towards incidents repeatedly occurring in the same precinct, towards patterns of misconduct that arise in civil rights litigation has caused the constitutional violations against plaintiff.

87.    In this case specifically, Detective Mason has been previously sued for false arrest in the Eastern District of New York in <u>Baptiste et al v. City of New York et al</u> (10-cv-00587-SJ –CLP) on 02/09/10 and in <u>Simmons et al v. The City of New York et al</u> (10-cv-03736-KAM –RLM) filed 08/13/10. Both cases are open. However, the City has no mechanism or database by which anyone in the NYPD chain of command, Corporation Counsel's office, or Comptroller's office tracks how many lawsuits Detective Mason has

---

[1] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

been named in as a defendant, whether his conduct described in the lawsuits are indicative of poor training, poor supervision, or policy failures. There is no tracking method through which the City of New York catalogues how much money, in litigation costs and settlement amounts, Detective Mason or Narcotics Bureau Brooklyn South, contributes to the overall skyrocketing cost of civil rights violations in New York City.

88.    Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the officers' responsibility lawsuit liability, even after multiple lawsuits. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.   Nothing has changed since 1999 and the present regarding this "total disconnect" between officers' liability and NYPD discipline, resulting in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests.

89.    The City has also been alerted to the regular use of stop and frisks by its police officers, which disproportionately target people of color, despite the lack criminal evidence that such stop and frisks actually produce, and despite the humiliation, inconvenience and constitutional violations that the majority of law-abiding people, mostly in communities of color, suffer as a result. In 2008, of the 531,159 New Yorkers were stopped by the police, 465,413 were totally innocent (88 percent). From the total, 271,602  were  black  (51  percent);  167,111  were  Latino  (32  percent);  and 57,407 were white (11 percent). In 2007, of the 468,732 New Yorkers were stopped by

the police, 407,923 were totally innocent (87 percent). From the total in 2007, 242,373 were black (52 percent), 142,903 were Latino (31 percent), 52,715 were white (11 percent).[2]

90.    The City is also aware that the misconduct does not stop at the regular use of stop and frisks to violate the civil rights of innocent people. In 2008, more than half (51%) of the summonses issued by NYPD officers were dismissed for legally insufficient evidence. Police officers have repeatedly told New York City news investigations that their supervisors pressure them into reaching "performance goals" or quotas, resulting in the violation of innocent New Yorker's civil rights.[3]

91.    The Civilian Complaint Review Board ("the CCRB"), a City police oversight agency, often finds complainants lack credibility based in part on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to the CCRB.   In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB.   The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

92.    The NYPD, once receiving a substantiated complaint by the CCRB, fails to

---

[2] See New York Civil Liberties Union "Stop and Frisk Report" available at http://www.nyclu.org/issues/racial-justice/stop-and-frisk-practices last visited on February 18, 2010. On the website, the NYCLU collects the same data back to 2004.
[3] See WABC's Jim Hoffer's three installments (March 3, May 23 and May 25, 2010) on NYPD quotas available at http://abclocal.go.com/wabc/story?section=news/investigators&id=7461355 last visited May 26, 2010.

adequately discipline officers for misconduct. In 2002, the percentage of officers who were the subject of substantiated CCRB complaints who received no discipline was 47%; in 2007, it was 75%.[4] The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which the police commissioner has done on many occasions. This entire procedure provide so many opportunities for meritorious complaints of false arrests to be dismissed or disregarded that there is no credible, effective oversight of police department employees, despite an apparently elaborate set of oversight mechanisms.

93. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

94. All of the aforementioned has created a climate where police officers and detectives make lies to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the

---

[4] The NYCLU issued a report in September 2007 on the CCRB detailing the failure of the NYPD to follow up on substantiated CCRB complaints, among other failures by the City and the CCRB to address police misconduct: "Mission Failure: Civilian Review of Policing in New York City, 1994-2006"

judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

95. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal.

96. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A.      In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B.      Awarding plaintiff punitive damages in an amount to be determined by a jury;

C.    Awarding plaintiff reasonable attorneys' fees, costs and disbursements of

this action; and

D.    Granting such other and further relief as this Court deems just and proper.

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury.


DATED:      April 1, 2011
            Brooklyn, New York


                                        Respectfully yours,

TO:

      City of New York                  By: Cynthia Conti-Cook
      100 Church Street                  Bar# CC0778
      New York, NY  10007                Stoll, Glickman & Bellina, LLP
                                         Attorneys for Plaintiff
      Detective Nicholas Mason           475 Atlantic Avenue, 3rd Fl
      Shield No. 4972                    Brooklyn, NY  11217
      Narcotics Borough Brooklyn South   (718) 852-3710
      1 Police Plaza, Rm 1100            (718) 852-3586
      New York NY 10038-1403             cconti-cook@stollglickman.com

      Sgt. Michael Dannecker
      Shield #1425
      Narcotics Borough Brooklyn South
      1 Police Plaza, Rm 1100
      New York NY 10038-1403